[No. 32150.   Department Two.   March 19, 1953.]

MARK P. DAVIS, *Respondent*, v. NORTH AMERICAN ACCIDENT INSURANCE COMPANY, *Appellant*.[1]

*Elvidge, Watt, Veblen & Tewell*, for appellant.

*Joseph A. Moschetto, Edward B. Hanley, Jr.*, and *Hanley & Manley*, for respondent.

[1]Reported in 254 P. (2d) 722.

SCHWELLENBACH, J.—This is an appeal from a judgment entered on a verdict in favor of respondent for loss sustained under a policy of accident insurance. This is the second appeal in this case. *Davis v. North American Accident Ins. Co.*, 39 Wn. (2d) 145, 234 P. (2d) 871. In the prior case, the then trial judge instructed the jury to bring in a verdict in favor of the plaintiff, holding that the defendant was liable under the policy as a matter of law. We reversed and remanded for a new trial, saying, after quoting part of the testimony:

"With testimony of this nature in the record, we are of the opinion that it was error for the court to hold as a matter of law that appellant was liable under the policy. The jury could have found from the evidence that the fall was sufficient to cause the injury irrespective of the presence of Gaucher's disease, and that therefore this disease was a mere condition of the accident. On the other hand, it could also have found that the contrary was true, and that the fall was no more than the occasion on which a more or less inevitable breaking of the bone, weakened as it was by disease, took place. In the latter event, the company would not be liable under the policy."

Having disposed of the appeal on the above ground, we did not feel it necessary to consider other assignments of error, one of which was the submission to the jury of the question as to whether or not the plaintiff's *disability* was contributed to, directly or indirectly, wholly or partly, by bodily infirmity, on the ground that there was no evidence upon which to submit such question.

In the present case, the trial court instructed:

"INSTRUCTION No. 1: If the plaintiff's fall was sufficient to cause the injury, to-wit, the broken leg, irrespective of the presence of Gaucher's disease, the plaintiff is entitled to recover. On the other hand, if the fall was no more than the occasion on which a more or less inevitable breaking of the bone, weakened as it was by disease, would have taken place at all events, then the company would not be liable under the terms of the policy and your verdict should be for the defendant.

"The burden is upon the plaintiff to prove by a fair preponderance of the evidence that his leg would have been broken irrespective of the presence of Gaucher's disease."

"INSTRUCTION No. 3: If you find that plaintiff is entitled to recover he is only entitled to recover for the degree and duration of disability that would have occurred irrespective of the presence of Gaucher's disease."

"INSTRUCTION No. 7: The policy of insurance involved in this case is an accident policy only. It provides specifically against any liability for disability contributed to by disease.

"If substantial injury would have been suffered from this fall irrespective of the presence of disease, the defendant would still be liable on the policy. However, in such event if the extent of the disability was enhanced or prolonged by disease, the defendant would not be liable to pay for the additional disability so occasioned."

"INSTRUCTION No. 9: Your verdict in this case will be entirely in the form of answers to certain interrogatories which are as follows:

"INTERROGATORY No. 1: Would the Plaintiff have broken his leg by reason of the fall irrespective of the presence of Gaucher's disease? (Answered "Yes.")

"If your answer to the above interrogatory is 'no', your deliberations will cease, and you will make no answer to the remaining interrogatories. If your answer is 'yes', you will then answer the following:

"INTERROGATORY No. 2: Did the plaintiff suffer a period of total disability which was occasioned by his broken leg, irrespective of the presence of Gaucher's disease and not contributed to thereby? (Answered "Yes.")

"If your answer to the above interrogatory is 'yes', you will then answer the following interrogatory:

"INTERROGATORY No. 3: What was the period during which such total disability existed? (Answered "18 months.")

"INTERROGATORY No. 4: Did the plaintiff suffer a period of partial disability which was occasioned by his broken leg, irrespective of the presence of Gaucher's disease and not contributed to thereby? (Answered "Yes.")

"INTERROGATORY No. 5. What was the period during which such partial disability existed?" (Answered "6 months.")

In the order denying motions for judgment n.o.v. and for new trial is the following:

"THE COURT FINDS that the disease from which the plaintiff was suffering at the time of the accident contributed to the fracture of the femur so that the bodily injury was not sustained solely through accidental means and that the defendant's motion for judgment notwithstanding the verdict would be granted but for the fact that the decision of

the *Supreme Court* on the first appeal is res adjudicata on this question and this Court is bound thereby; therefore it is

"ORDERED, ADJUDGED and DECREED that the defendant's motion for judgment notwithstanding the verdict of the jury be, and the same is hereby denied, and an exception is allowed to the defendant; it is further

"ORDERED that the defendant's motion for new trial be, and the same is hereby denied, and an exception is allowed to the defendant."

The judgment reiterated the findings heretofore recited and awarded judgment of $3,600 for total disability; $600 for partial disability; and $948 for incidental expenses. This appeal follows.

Appellant assigns error: in denying the challenge to the sufficiency of the evidence at the close of the plaintiff's case; in refusing to direct a verdict for the defendant at the close of all the evidence; in giving certain instructions; in refusing to give certain requested instructions; in denying motion for a new trial; in denying motion for judgment notwithstanding the verdict.

The accident policy involved herein provided:

"(a) If the Insured, while this policy is in force, shall sustain bodily injury, which is effected directly and independently of all other causes solely through accidental means . . . the company will pay:" (Then are listed certain payments to be made.)

The policy also provided under the heading: "NOT COVERED":

"(1) The insurance hereunder does not cover: any loss caused or contributed to, directly or indirectly, wholly or partly, by bodily or mental infirmity, bacterial infections, or any other kind of disease; . . ."

For some time prior to the accident complained of, Mr. Davis had been suffering from Gaucher's disease. Dr. Duncan described it as follows:

"A. Gaucher's disease is a disturbance of the housekeeping in the fat department of the body, and instead of putting the fat down in its normal areas for padding and protection, this fat is deposited in bone, in the solid organs, in the abdomen, and the fat in certain of these organs such as the

spleen acts as an irritant. It is foreign to the spleen. The spleen enlarges until it fills most of the abdomen, as it has in this case. The cysts begin to appear in the bones. These are fatty cysts. The bone tries to grow around them and create strength where the cysts have created weakness, and it is kind of a race between the formation of cysts and the reconstruction of the bone on the part of the body. Some of these cysts become very large. . . ."

In spite of that, Mr. Davis worked as a salesman for a firm dealing in hotel, restaurant, camp, etc., service equipment. He visited camps, various institutions, and steamships. His son testified that he was very active, and that a short time before the accident the father and son had gone camping and that both climbed up a mountain to see the view.

About eight o'clock on the morning of January 21, 1949, Mr. Davis was preparing to go to work. It had snowed the night before, and there was ice underneath the snow. He swept a pathway between the house and garage and around the garage; backed the car out of the garage; closed the garage doors from the inside; went out through a smaller door and started to walk around the side of the garage to get into his car. He testified:

". . . and when I slipped my left foot went out from under me and my right leg sort of went back under me, and I fell right on it."

The fracture of the right femur occurred right at a cyst caused by Gaucher's disease.

Dr. H. T. Buckner testified for Mr. Davis and Dr. William R. Duncan for the insurance company. According to the testimony of Dr. Duncan, both the bodily injury and the resultant loss were contributed to by Gaucher's disease. Dr. Buckner, however, was of the opinion that, even though Mr. Davis had not had any diseased condition of the bone, the fall would have caused the break in question; that if he had not had the fall he might never have had any break in the leg. He testified:

"Falls. We see them fall. I saw a woman brought in this morning. Fell. Had the same kind of break he has. They break on falls."

■ We feel that there was sufficient conflict of testimony to submit to the jury the question as to whether or not respondent sustained *bodily injury* solely through accidental means.

Appellant contends that the injury was not compensable under the contract of insurance because (a) it was not included in the coverage, but (b) was specifically excluded.

The policy in question contained two parts. The company agreed to pay, in clause (a), if the insured sustained bodily injury which was "effected directly and independently of all other causes solely through accidental means." There was a sufficient conflict of testimony to submit that question to the jury, which found that the bodily injury, the fracture, was caused solely by accidental means. If that were the only provision in the contract, the respondent could recover. *Kelley v. Pittsburgh Cas. Co.,* 256 Pa. 1, 100 Atl. 494.

■ But, contained in the contract, under a heading in black type, "NOT COVERED," was a provision excluding liability for loss or disability due to infirmity or disease. Clause (1) provided that the insurance did not cover any loss caused or contributed to directly or indirectly, wholly or partly, by bodily infirmity. Where such an exclusionary clause is a part of a contract for accident insurance, and it appears that the plaintiff's loss or disability resulted from accidental injury acting in conjunction with a pre-existing and substantial physical infirmity, there can be no recovery. If an injury and an existing bodily disease or infirmity concur and co-operate in the loss or disability, no liability exists under such a contract. *White v. Standard Life & Accident Ins. Co.,* 95 Minn. 77, 103 N. W. 735, 884; *Ewing v. Equitable Life Assurance Society of the United States,* 320 Pa. 577, 182 Atl. 369; *Runyon v. Commonwealth Cas. Co.,* 109 N. J. L. 238, 160 Atl. 402; *Lucas v. Metropolitan Life Ins. Co.,* 339 Pa. 277, 14 A. (2d) 85, 131 A. L. R. 235. See note 131 A. L. R. commencing at page 254.

■ While the rule is thoroughly settled that policies of this and like character are to be construed liberally, and that ambiguous provisions or those capable of two construc-

tions should be construed favorably to the insured and most strongly against the insurer, plain, explicit language cannot be disregarded, nor an interpretation given the policy at variance with the clearly disclosed intent of the parties. *White v. Standard Life & Accident Ins. Co., supra.*

With regard to the *loss* or *disability,* Dr. Buckner testified:

"Q. Doctor, would he have received a resulting disability as a result of this fracture even if he had not had any disease of the bones? A. Well, he'd have a better result than what he has if he didn't have a disease of the bone. We could have saved him the shortening that he has, and also a better function of the knee if he hadn't had the disease in the bone. Q. But he might have had some disability? A. Usually some disability resulting from a fracture of the thigh. Q. You do find in your experience that people without any diseased condition also receive disabilities; is that correct? A. Some of them do, yes, sir. Q. Now, Doctor, he was in the Providence Hospital approximately how long? A. I think about six months. Q. During that time you prescribed the treatment for him; is that right? A. Yes. Q. You attended him? A. Yes. Q. And he had this operation, did he, in the hospital, used the operating room? A. We first put him up in plaster, lined up the fracture and set it in a proper manner, and he was put in a plaster cast for approximately three months, keeping the femur quiet as we ordinarily do, and he didn't develop union, so we had to do something else in order to establish union, so we readjusted the fragments to secure bony union of the fracture. Q. That treatment occurs in cases where there had been no disease of the bone; isn't that right? A. Well, we usually set them; that is, if there is no disease of the bone, a lot of times we can graft bone, but in a diseased bone like this you couldn't do any grafting or transplanting either, so you have to shorten up and let Nature fill in the area involved."

It will thus be seen that, immediately upon respondent being taken to the hospital after the accident, Gaucher's disease interfered with his recovery. It contributed, indirectly and partly, to his loss. There was a concurrence and co-operation between the injury and the infirmity which resulted in his loss and disability. We fail to see, from the record, how the minds of reasonable men could differ in

this regard. The trial court should have directed a verdict for the defendant at the close of all the evidence.

In view of the result reached, it will not be necessary to consider the assignments of error with respect to the giving of instructions, the refusal to give requested instructions, and in denying the motion for new trial.

The judgment is reversed and remanded, with direction to grant appellant judgment notwithstanding the verdict.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.

June 3, 1953. Petition for rehearing denied.