[No. 4330–1.   Division One.   March 14, 1977.]

BETTY E. SPANGLER, *Respondent,* v. INSURANCE COMPANY OF NORTH AMERICA, *Appellant.*

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle* and *Robert R. Beezer,* for appellant.

*Keller, Rohrback, Waldo & Hiscock, David F. Hiscock,* and *Marlin L. Vortman,* for respondent.

SWANSON, J.—Insurance Company of North America (INA) issued to Betty E. Spangler a certificate of insurance insuring her under a group accident and sickness policy. The insurance policy provided that INA would pay benefits of $150 per week should Spangler be "wholly and continuously" disabled because of sickness. These sickness benefits were to be payable to Spangler for a period not to exceed 260 weeks or until she reached the age of 70. The policy also provided that INA would pay benefits of $150 per week in the event Spangler became disabled "directly and independently of all other causes from accidental bodily injuries . . ." These benefits would extend for the lifetime of the insured.

On November 8, 1972, Spangler allegedly sustained serious, accidental bodily injuries while attempting to calm a horse that had become "cast"[1] in its stall. At the time she received her accidental injuries, Spangler was already receiving sickness benefits under her policy from INA as a result of acute pancreatitis and related stomach disorders.

[1] An animal that has become "cast" is one that is on its back and unable to get up.

Moreover, since approximately 1953, Spangler had been subjected to a myriad of physical and emotional traumata. A brief summary of her medical history as found by the trial court is as follows: In 1953 she was involved in an automobile accident. A second auto accident occurred in 1956 which injured her neck and spine to such a degree that a 4–level fusion of her spine was performed in 1959. As was stated previously, in March of 1971 she developed pancreatitis and related stomach disorders requiring a splenectomy and gastrectomy. In May of 1971, she suffered extreme edema of her legs. In June of 1971, Spangler was involved in a third automobile accident in which her head hit the windshield causing acute musculotendinous strain of the neck and back. Finally, in September of 1972, she was hospitalized for the amputation of a toe.

A short time after receiving her injuries from the horse incident, the trial court found that Spangler telephoned INA and reported the circumstances of the accident and her resulting injuries. At this time INA orally acknowledged Spangler's notification but did not request her to submit any written notice. From the time of the accident until April of 1974, when she first learned that her injuries would totally disable her and requested INA to change her status from that of sickness to accident, Spangler was unable to work and had spent much of her time being treated for her injuries. Upon learning of Spangler's desired status change, INA refused to honor the request citing as its reasons several paragraphs from the insurance policy.

This suit was commenced by Spangler for a declaration of her entitlement to accident benefits as a result of the November 1972 horse incident. The trial court found that she was totally and permanently disabled from the horse incident and declared that she was entitled to accident benefits under the terms of her policy. From this judgment INA appeals.

INA initially assigns error to the trial court's findings of fact entitling Spangler to accident benefits. It is INA's contention that Spangler's disability is the result of bodily

infirmity which is expressly excluded by the terms of the policy:

> Any loss caused by or resulting from illness, disease, hernia, bodily infirmity or any bacterial infection . . . will be considered a loss resulting from sickness[,]

and that in order for her to recover she must show that her injury resulted

> directly and independently of all other causes from accidental bodily injuries sustained by the Insured . . .

In support of its argument, INA points to Spangler's plethora of previous injuries and specifically to her prior neck trauma, including her spinal fusion.

The cases upon which appellant relies in support of its contention, *Davis v. North American Accident Ins. Co.*, 42 Wn.2d 291, 254 P.2d 722 (1953); *Evans v. Metropolitan Life Ins. Co.*, 26 Wn.2d 594, 174 P.2d 961 (1946), contain clauses excluding coverage for loss caused or contributed to directly or indirectly, wholly or partly, by disease or bodily infirmity. In discussing the effect of this type of restrictive clause, the *Evans* court stated at page 623,

> Where the liability of the insurance company is so restricted, it is not sufficient for a beneficiary to establish a direct causal connection between the accident and the injury. He is compelled to show that the resultant condition was caused solely by accidental means; and, if the proof shows a preexisting infirmity which was a contributing factor, he cannot recover.

Unlike the clauses under discussion in *Evans* and *Davis,* in the instant case we have a somewhat different exclusion provision in that it merely recites that any loss "caused or resulting from" a bodily infirmity will be considered a loss resulting from sickness. For this reason, the *Evans* and *Davis* opinions are of doubtful value in interpreting the exclusion clause under discussion today.

Whether recovery should be allowed in the present situation depends to a great extent on several factors, including the policy language, the nature of the alleged infirmity, the extent of its interaction with the accident in

producing the injury, and the medical testimony developed as to the nature and cause of the injury. This is not to say, however, that the mere fact the insured suffered from a preexisting infirmity at the time of the accident would, of itself, preclude recovery under the policy. *Wolfangel v. Prudential Ins. Co. of America,* 209 Minn. 439, 296 N.W. 576 (1941); *Grabau v. Hartford Accident & Indem. Co.,* 149 N.W.2d 361 (N.D. 1967); see cases cited generally in Annot., 84 A.L.R.2d 176 (1962). Rather, where the bodily infirmity merely contributes to the injury, after being precipitated by the accident, it is not the proximate cause of the injury, nor a contributing cause within the meaning of the terms of the present policy. *Kearney v. Washington Nat'l Ins. Co.,* 184 Wash. 579, 52 P.2d 903 (1935). In other words, a preexisting infirmity should not be considered as a cause unless it substantially contributes to the disability. In this vein, a mere "predisposition" or "susceptibility" to injury does not necessarily amount to a substantial contributing cause. A mere relationship of undetermined degree is not enough. *Continental Cas. Co. v. Freeman,* 481 S.W.2d 309 (Ky. 1972).

In reviewing the testimony of the medical experts called to testify at the trial, we find that Dr. Tuohy, plaintiff's physician, testified that the injury suffered by Mrs. Spangler during the horse incident totally and permanently disabled her. Dr. Agger, called to testify on behalf of INA, stated that Spangler's spinal fusion coupled with her accident of November 8, 1972, "contributed to her overall medical situation of unwell–being." Yet, each physician testified that the spinal fusion was intact, or sound, both before and after the horse incident. In fact, Mrs. Spangler had engaged in gainful employment for several years prior to the incident of November of 1972, and, aside from her numerous other bodily ailments, had not complained of neck pain until the horse incident.

In our view, it is beyond peradventure that every injury or infirmity suffered by a person from his birth to the date of a particular injury contributes to some degree to the

condition then present. In reviewing respondent's argument and the language of the INA policy relative to exclusion, we believe their interpretation to be too restrictive and unreasonable. *See Couey v. National Benefit Life Ins. Co.,* 77 N.M. 512, 424 P.2d 793 (1967). As such, we are mindful of the language in *Silverstein v. Metropolitan Life Ins. Co.,* 254 N.Y. 81, 84, 171 N.E. 914, 915 (1930).

> In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men . . .

We are satisfied that in the instant case neither the fact that plaintiff had suffered previous back problems nor that she was receiving sickness benefits under her policy prior to the November 1972 accident can be considered as a matter of law to have caused or resulted in her being permanently disabled.

INA's second assignment of error is directed to the trial court's findings stating that sufficient notice was given to INA of Spangler's injuries. INA contends that written notice should have been given by Spangler and, since such notice was not given, Spangler is therefore not entitled to accident benefits.[2] The pertinent policy provisions state that

> Written notice of claim must be given to the Company within 30 days after the occurrence or commencement of

---

[2]The trial court made the following findings of fact:

"14. (a) Within 30 days after the November 8, 1972, accident with the horse, the plaintiff telephoned INA and reported this accident and her resulting bodily injuries to the extent she was aware of such injuries at the time.

"(b) At this time, INA orally acknowledged the plaintiff's notification but INA did not request the plaintiff to submit any written notice.

"15. (a) In April of 1974, the plaintiff initially learned from her physician that she would not recover from the bodily injuries she sustained in the November 8, 1972, horse accident.

"(b) The plaintiff then telephoned INA within 30 days and again notified INA of the November 8, 1972, horse accident and her resulting bodily injuries."

> any loss covered by the policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Claimant to the Company at its Home Office in Philadelphia, Pennsylvania, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

From the record it appears that Mrs. Spangler orally notified INA of her injuries resulting from the horse incident within 30 days of its occurrence. It also appears that her attending physician, Dr. Tuohy, sent a written report of the horse accident to INA on January 16, 1973. This initial report was supplemented with additional written progress reports by Dr. Tuohy. It was not until the spring of 1974, however, that it was finally determined that Spangler would be wholly and continuously disabled from the horse incident. At that time Spangler again orally notified INA of her condition and requested a change in her status from sickness to accident.

While it is true that Spangler has never personally provided INA with a written statement of her loss, it is equally true that INA failed to provide the forms necessary for her to document her injury. Moreover, INA would be hard pressed to say that it was utterly without knowledge of Spangler's injuries inasmuch as Dr. Tuohy reported upon the condition of his patient whenever requested to do so. The INA policy stipulates that the insured should give notice of loss within a reasonable time. As the Supreme Court stated in *Buckley v. Massachusetts Bonding & Ins. Co.*, 113 Wash. 13, 35, 192 P. 924 (1920),

> It is undoubtedly the rule that, when a policy of insurance requires immediate notice of the death or injury, notice must be given within a reasonable time, . . .

The *Buckley* court went on to state that any sufficient excuse on the part of the insured for not giving immediate notice was a question for the trier of fact. Under the circumstances presented in the instant case, we cannot say that the trial court erred in deciding as a matter of fact that notice was given by Spangler within a reasonable time.

**[3]** It should also be pointed out that INA made no showing that prejudice resulted from Spangler's failure to file a written notice of loss. Generally,

> [t]he requirement of prejudice is imposed notwithstanding it is omitted from the text of the conditions and "[t]here has been a failure to fulfill a condition upon which obligation is dependent."

*Burr v. Lane,* 10 Wn. App. 661, 669, 517 P.2d 988 (1974). *See also Oregon Auto. Ins. Co. v. Salzberg,* 85 Wn.2d 372, 535 P.2d 816 (1975).

Finally, appellant argues that if it is the trial court's determination that Spangler is entitled to benefits under the accident provision of the policy, the judgment should be modified to provide for the possibility of Spangler's recovery at some future unspecified date. The judgment entered states,

> IT IS ADJUDGED, DECREED AND ORDERED that INA, under the terms of its group blanket disability policy with the plaintiff, is obligated to pay the plaintiff benefits of $150 per week for the plaintiff's lifetime.

The judgment as entered is open to some speculation in that it fails to recite specifically one of the terms of the written contract which places a condition upon the benefits payable. The policy provides in pertinent part,

> Thereafter, the Company will continue to pay the applicable Weekly Benefit during the lifetime of the Insured *as long as the Insured is wholly and continuously prevented by "such injuries" from engaging in any substantially gainful occupation for which she is qualified or may reasonably become qualified by reason of her education, training and experience.*

(Italics ours.) Inasmuch as the policy provisions control the present action before us, the judgment entered must be revised to reflect the limitation upon benefits contained in the quoted policy provision. We therefore remand the November 19, 1975, judgment and conclusions of law for modification to reflect the conditions placed upon payment

of lifetime weekly benefits contained in the policy. In all other respects, the judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.