990 P.2d 991 (2000)
Jerrold I. KAPLAN, Appellant,
v.
NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Respondent.
No. 43464-1-I.
Court of Appeals of Washington, Division 1.
January 10, 2000.
*993 Katherine Hendricks, Hendricks & Lewis, Seattle, for Appellant.
James Hermsen, Seattle, for Respondent.
*992 BAKER, J.
Jerrold Kaplan has been disabled by obsessive compulsive disorder (OCD) since 1989, but did not file a claim under his disability insurance policies until he was actually diagnosed in 1994. In his claim, Kaplan requested disability benefits starting from 1989, but Northwestern Mutual Life Insurance Company declined Kaplan's claim based upon failure to give notice and proof of claim "as soon as reasonably possible," as required by the insurance policies in question.
Kaplan sued, and argued that he did give notice as soon as reasonably possible under the circumstances because he didn't realize that he had OCD until his diagnosis in 1994. Kaplan also argued that Northwestern failed to prove that it was prejudiced by the delay. The trial court granted summary judgment to Northwestern, and Kaplan appeals. Because there are material issues of fact regarding whether Kaplan made his claims as soon as reasonably possible and whether Northwestern was prejudiced by the delayed notice, we reverse and remand for a trial.

I
Jerrold Kaplan is disabled by obsessive compulsive disorder (OCD) and Tourette's Syndrome. OCD is a chronic psychiatric disorder characterized by repetitive behaviors and intrusive, anxiety-provoking thoughts. Kaplan obtained a college degree, but dropped out of graduate school and drifted from job to job. He was fired from his job as a computer programmer at the University of Washington in June 1989 due to unsatisfactory performance, and has been unemployed since then except for a brief stint as a telemarketer in 1990.
In 1992, Kaplan responded to two newspaper advertisements seeking participants for OCD research studies, but was told that the studies were filled. He then applied to participate in an OCD study being conducted by Dr. Dane Wingerson, who interviewed Kaplan and told him that he did not have OCD. In 1994, Kaplan responded to another newspaper advertisement for an OCD study conducted by Dr. Peter Londborg, who diagnosed Kaplan with OCD on March 9, 1994. Dr. Londborg believes that Kaplan has had significant symptoms of OCD throughout his life, and that OCD has been the major factor in Kaplan's inability to work since 1989. However, Dr. Londborg found no evidence of hallucinations, delusional ideation, or other formal thought disorder, concluding that "[c]ognitive functioning was clearly intact."
Dr. Londborg interviewed Kaplan for the last time in July 1994. At that time, Dr. Londborg told Kaplan that his OCD was severe and asked Kaplan whether he had applied for disability benefits. Kaplan says that was the first time he understood that he was disabled and that the cause of his disability was OCD, and that before he went to Dr. Londborg, he thought the problem was "just me and my own personality."
Kaplan applied to Northwestern for disability benefits in August 1994. He defined the onset date of his disability as June 29, 1989 (the last day of his job as a computer programmer), and requested that benefits be paid from that date to the present. Northwestern informed Kaplan that it could not honor his request because he did not provide timely notice of claim or proof of disability as required by the policies. Instead, Northwestern defined the onset date as March 9, 1994 (the date Dr. Londborg diagnosed Kaplan with OCD), and has been paying disability benefits to Kaplan ever since.
Kaplan then initiated this action, arguing that because he didn't know he had OCD before 1994, he had submitted notice and proof of claim "as soon as reasonably possible" as required by the policies. Kaplan also argued that Northwestern was required to demonstrate that it had been prejudiced by the timing of Kaplan's claim and that it failed to do so. Northwestern moved for summary judgment on the grounds that notice was late because it was reasonably possible for Kaplan to give notice of his disability as early as *994 1992, when Kaplan began inquiring about OCD research studies, if not earlier. Northwestern also argued that it did provide substantial evidence of prejudice, even though the prejudice requirement should not apply to disability insurance. The trial court granted Northwestern's motion for summary judgment and Kaplan appeals.

II
On appeal of summary judgment, the standard of review is de novo, with the appellate court performing the same inquiry as the trial court.[1] A motion for summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] All reasonable inferences from the facts must be considered in the light most favorable to the nonmoving party.[3]
In granting summary judgment to Northwestern, the trial court found that Kaplan knew or should have known that he had OCD before his 1994 diagnosis. The court phrased the legal standard as "whether or not a reasonably prudent person would have acted or failed to act in the same or similar circumstances." While this is the correct standard, the trial court erred in disregarding substantial contrary evidence and failing to draw reasonable inferences from that evidence in reaching its conclusion.
Northwestern argues that Kaplan knew or should have known that he suffered from OCD under an objective, reasonable person standard, and that the question of when Kaplan "accepted" his disability is a subjective matter that does not create an issue of material fact.[4]
"What is reasonable must be measured by what a reasonably prudent man would believe in like circumstances."[5] Northwestern is correct that the proper standard is objective and that the subjective question of when Kaplan first "accepted" his disability does not dictate the result. But Northwestern mischaracterizes Kaplan's argument. Kaplan does not dispute that the applicable standard is objective, but maintains that the question is whether a reasonable person with OCD would realizewithout diagnosis by a physicianthat he was disabled by OCD. Kaplan's physicians stated that it is common for OCD sufferers to fail to realize they have a recognizable, treatable disorder, and that even physicians often have difficulty recognizing OCD. Dr. Wingerson at Harborview Medical Center told Kaplan in 1992 that he did not have OCD.[6] It is certainly arguable that a reasonable person would not think he had OCD and would not apply for disability benefits when a physician told him that he did not have OCD.
The trial court also apparently accepted Northwestern's argument that there was no issue of material fact because Dr. Londborg's 1994 chart notes state that Kaplan previously knew he suffered from OCD:
Mr. Kaplan indicates that he has become aware over the past few years that he suffers from OCD. He notes that he started reading about it three to four years ago. Prior to that time he was not aware that the symptoms that he experiences and the behavioral patterns that he has lived with throughout his life fit into any specific diagnosis.
Kaplan denied telling Dr. Londborg this, and his two physicians gave sworn statements that contradicted Northwestern's interpretation *995 of Dr. Londborg's chart notes. However, Northwestern argued that those statements must be disregarded, claiming that Marshall v. AC & S, Inc.[7]holds that a plaintiff opposing summary judgment cannot create an issue of fact by introducing self-serving affidavits that unreasonably conflict with the plaintiff's documented medical history.
This is a misapplication of the narrow rule in Marshall, in which we held that a party cannot create an issue of material fact by introducing a self-serving affidavit that directly contradicts that party's own unambiguous sworn testimony, particularly when there is reliable corroborating evidence supporting the sworn testimony.[8] Kaplan's situation is entirely different. Here, Kaplan sought to introduce testimony that conflicted with his doctor's chart notes, not with earlier sworn testimony. A doctor's chart notes are not the functional equivalent of a plaintiff's unambiguous sworn testimony. Moreover, Dr. Londborg's chart notes were not unambiguous. Dr. Londborg's statement that Kaplan "has become aware over the past few years that he suffers from OCD" is subject to various reasonable interpretations because it does not clearly indicate when Kaplan actually became aware that he suffered from OCD. Furthermore, unlike Marshall, the contradictory testimony here came from the plaintiff's physicians as well as from the plaintiff himself. Kaplan's physicians declared in sworn statements that they did not believe that Kaplan realized he had OCD until after Dr. Londborg diagnosed him in 1994. Dr. Londborg expressly disagreed with Northwestern's interpretation of his chart notes, stating that "I did not mean to imply in my chart notes, and I do not believe, that Mr. Kaplan realized that he did indeed have OCD, and that OCD was the [sic] hindering his ability to perform the principal duties of his occupation, until after he came to me for treatment."
For purposes of summary judgment, the trial court should not have disregarded the sworn statements of Kaplan and his physicians. These statements raise a disputed issue of material fact regarding when Kaplan knew he had OCD, making summary judgment inappropriate.
Kaplan also contends that even if he did know that he was disabled by OCD, the court should have considered the extent to which his disease impaired his ability to give timely notice and proof of claim. Timely notice is sometimes excused when the insured suffers from severe mental incapacity.[9] However, Kaplan has not raised a material issue of fact on this issue. Dr. Londborg stated that Kaplan's "[c]ognitive functioning was clearly intact" even though OCD symptoms prevented Kaplan from working. Although there is an issue of fact regarding when Kaplan knew he was disabled by OCD, the record does not support a finding that Kaplan was mentally impaired to the point that he would be unable to file a claim even if he knew that he was disabled by OCD.

III
Kaplan argues that Northwestern was required to show that it was prejudiced by the timing of his claim, and that it failed to do so. Northwestern concedes that a prejudice requirement is appropriately imposed in certain types of insurance cases, but argues that disability insurance is not one of them. Northwestern also claims that it did provide substantial evidence of prejudice.
An insurer may deny coverage based on the insured's failure to comply with the policy "only if the insurer was actually prejudiced by the insured's actions or conduct."[10] We have applied the actual prejudice *996 requirement to various provisions and types of insurance, including notice clauses and disability coverage.[11] The insurer must prove actual and substantial prejudice, even when the insured has breached the insurance contract.[12] A showing of prejudice may be required even if the text of the insurance policy contains no such requirement.[13] The existence of prejudice is ordinarily a question of fact and the burden of proof is on the insurer.[14]
The policy underlying the prejudice requirement is based on risk spreading. Insurance policies should provide the maximum protection possible, while still being fair to the insurer. If insurers were allowed to avoid payment based on the insured's conduct even in the absence of prejudice, the public policy of risk spreading would be compromised and, in a sense, the insurer would receive a windfall.[15]
We reject the notion that an exception to the well-established prejudice requirement should be carved out for disability insurance cases. We see no relevant distinction between disability insurance and other types of insurance with respect to the policy rationale behind the prejudice requirement. We are further persuaded by the fact that the Legislature specified standard notice of claim and proof of disability provisions, but did not see fit to exclude disability insurance from the well-established judicial requirement of prejudice.[16] There is no indication that the Legislature intended these standardized provisions relating to notice and proof of loss to be used by insurance companies as a tool to deny coverage and avoid the prejudice requirement. Rather, the purpose of these provisions are
to provide reasonable standardization and simplification of terms and coverages of individual disability insurance policies in order to facilitate public understanding and comparison and to eliminate provisions contained in individual disability insurance policies which may be misleading or confusing in connection either with the purchase of such coverages or with the settlement of claims and to provide for full disclosure in the sale of such coverages[[17]]
We presume that if the Legislature had intended to foreclose the prejudice requirement for disability insurance, it would have done so explicitly.
Because we hold that Northwestern was required to demonstrate prejudice, we next examine whether a material issue of fact on that issue has been raised. Northwestern argues that it provided substantial evidence of prejudice because its expert testified that Kaplan's OCD should respond to a combination of behavioral therapy and medication and because Kaplan's condition may have deteriorated over time. Therefore, according to Northwestern, it was prejudiced because it was unable to verify whether Kaplan was disabled by OCD in 1989 and because Kaplan might have been cured had he been diagnosed and received treatment then.
Northwestern's "substantial evidence" is not sufficient to meet its burden of proof for purposes of summary judgment. Kaplan introduced evidence indicating that he has not responded to five years of treatment with his doctor, and that his doctor feels that earlier treatment would not have significantly changed the course of his OCD. A reasonable person could conclude that Northwestern was not prejudiced even if it was not notified *997 of Kaplan's condition back in 1989. Kaplan has raised a material issue of fact regarding prejudice that is not appropriate for summary judgment.

IV
We hold that Kaplan has raised material issues of fact regarding whether he made his claim as soon as reasonably possible and whether Northwestern was prejudiced by the timing of his claim. Our final task is to examine the language of Kaplan's first three policies to determine whether the absolute one-year time limit for submitting proof of loss has begun to run.
Kaplan has six separate disability insurance policies from Northwestern Mutual. Regarding notice of claim, all six of the policies provide that:
Written notice of claim must be given to the Company within 60 days after the occurrence or commencement of any loss covered by this policy. If notice cannot be given within 60 days, it must be given as soon as reasonably possible.
In addition, Kaplan's first three policies provide that:
Written proof of disability ... must be given within 90 days after termination of the period for which the Company is liable. Failure to give proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time; however, proof must be given not later than one year from the time proof is otherwise required except in the absence of legal capacity.
In his last three policies, the one-year time limit has been removed from the proof of disability section, and the beginning of the 90-day period has been redefined:
Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.
The first three policies are arguably ambiguous because they require proof of disability within 90 days unless not reasonably possible, while requiring written notice of claim within 60 days or as soon as reasonably possible. Insurance policy language is ambiguous if fairly susceptible to two different reasonable interpretations.[18] There is, however, an absolute one-year time limit for giving written proof of disability, except in the absence of legal capacity. Because there is no evidence that Kaplan was legally incapacitated, proof of disability was clearly late for those policies, even if he made his claim "as soon as reasonably possible."[19] Nevertheless, Northwestern must still prove at trial that it was prejudiced by Kaplan's late claim in order, to deny coverage under the first three policies.
The analysis differs with respect to the last three policies because they do not contain the absolute one-year time limit. Under those policies, if notice and proof of claim cannot be given within the specified time limits, they may be submitted "as soon as reasonably possible." Therefore, in order to deny coverage to Kaplan under the latter three policies, Northwestern must show that Kaplan failed to make his claim as soon as reasonably possible and that it was prejudiced by the timing of Kaplan's claim.
In conclusion, we hold that with respect to all six of Kaplan's policies, Northwestern has the burden of proving that it was prejudiced by the timing of Kaplan's notice of claim. With respect to the latter three policies, Northwestern must also show that Kaplan failed to submit notice and proof of disability as soon as reasonably possible. In determining whether Kaplan submitted his claim as soon as reasonably possible, the proper standard is what would be reasonable under all the relevant circumstances, and for purposes of summary judgment, the contradictory *998 statements of Kaplan and his doctors cannot be excluded under Marshall.
REVERSED.
APPELWICK, J., and ELLINGTON, J., concur.
NOTES
[1] Herron v. Tribune Publishing Co., Inc., 108 Wash.2d 162, 169, 736 P.2d 249 (1987).
[2] CR 56(c); Hontz v. State, 105 Wash.2d 302, 311, 714 P.2d 1176 (1986).
[3] Scott v. Pacific West Mt. Resort, 119 Wash.2d 484, 502, 834 P.2d 6 (1992).
[4] Kaplan stated that "it was only after my final interview with Dr. Londborg ... that I understood and accepted that I was disabled and that the cause of my disability was OCD."
[5] State Farm Mutual Auto. Ins. Co. v. Erickson, 5 Wash.App. 688, 692, 491 P.2d 668 (1971).
[6] Although this statement comes from Kaplan's declaration, it is not hearsay because it is not offered to prove the truth of the matter asserted (that Kaplan did not in fact have OCD), but rather to show that he reasonably could not have known that he had OCD.
[7] 56 Wash.App. 181, 782 P.2d 1107 (1989).
[8] Marshall v. AC & S, Inc., 56 Wash.App. 181, 183, 782 P.2d 1107 (1989); Radobenko v. Automated Equipment Corp., 520 F.2d 540 (9th Cir. 1975).
[9] Seabra v. Puritan Life Ins. Co., 117 R.I. 488, 369 A.2d 652, 656 (1977) (manic-depressive not bound to give notice of disability when unable to do so by reason of the very disability insured against); 3 Appelman Insurance Law and Practice § 1417 (insanity or mental incapacity may excuse timely proof of notice).
[10] Oregon Auto. Ins. Co. v. Salzberg, 85 Wash.2d 372, 377, 535 P.2d 816 (1975).
[11] See, e.g., Benham v. Wright, 94 Wash.App. 875, 973 P.2d 1088, 1092 (1999); Canron, Inc. v. Federal Ins. Co., 82 Wash.App. 480, 485, 918 P.2d 937 (1996); Safeco Title Ins. Co. v. Gannon, 54 Wash.App. 330, 336-37, 774 P.2d 30 (1989); Spangler v. Insurance Co. of N. Am., 17 Wash. App. 121, 128, 562 P.2d 635 (1977); Pulse v. Northwest Farm Bur. Ins. Co., 18 Wash.App. 59, 60-62, 566 P.2d 577 (1977).
[12] Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co., 83 Wash.App. 432, 437, 922 P.2d 126 (1996), review denied, 131 Wash.2d 1010, 932 P.2d 1255 (1997).
[13] Spangler, 17 Wash.App. 121 at 128, 562 P.2d 635.
[14] Canron, 82 Wash.App. at 485, 918 P.2d 937.
[15] Oregon Auto. Ins., 85 Wash.2d at 376-77, 535 P.2d 816.
[16] RCW 48.20.082 and 48.20.102.
[17] WAC 284-50-300.
[18] Smith v. Continental Casualty Co., 128 Wash.2d 73, 904 P.2d 749 (1995).
[19] For the same reason, we need not reach Northwestern's argument that the word "monthly" should be read into the written proof of disability clause in the first three policies in order to foreclose Kaplan's claim.