[No. 46556-2-I.   Division One.   February 20, 2001.]

BEN E. KEITH, *Appellant*, v. ALLSTATE INDEMNITY COMPANY, *Respondent*.

*Richard L. Gemson*, for appellant.

*Rory W. Leid* and *Mark E. Mills* (of *Clarke, Bovingdon, Cole, Mills & Lether, P.C.*), for respondent.

BECKER, J. — An insured has a duty to cooperate with the insurer when making a claim. This duty includes providing access to financial information when a request for such information is reasonable in the circumstances of the claim. In this case, the insured's claim for loss of a car due to fire

raised a reasonable question as to whether the insured actually owned the car. The insured refused to cooperate with the insurer's request for information about his financial condition, and filed a lawsuit when the insured denied coverage. We affirm an order of summary judgment in favor of the insurer.

In the summer of 1997, Ben Keith agreed to store a classic car near his Seattle home. On May 22, 1999, the car was destroyed by fire. Shortly after the fire, Keith contacted his insurer, Allstate, to find out whether the loss was covered under his homeowner's policy. He discovered that it was not. He did learn, however, that the car could be covered under his Allstate auto policy if it had been purchased within 30 days of the fire.

A few days later, Keith asked his agent to make sure the car was listed on his policy. He made a claim for coverage based on two documents dated May 3, 1999, that purported to show Keith had agreed to purchase the car. The agreement was between himself and a relative, Claude Rawlins, for a sale price of $9,000. It provided that Keith would make a down payment of $3,000 on the car the following month, and would pay monthly installments of $300 thereafter. Another payment of $3,000 would be made a year later in June of 2000, and the balance would be paid in monthly installments of $300. According to Keith, the agreement was conditioned on the sale of one of Keith's other cars, so that he could obtain the funds for the down payment.

On July 14, 1999 Allstate sent a letter to Keith requesting authorization to access his personal financial records, including credit reports, tax returns, monthly account statements, profit and loss reports, and any notices of delinquency. Keith refused to sign the authorization.

On July 16 and 19, Allstate took recorded statements from Keith, Claude Rawlins, and Claude's brother, Bruce Rawlins, whose name was on the title. On August 3, Allstate sent Keith a letter stating that its investigation was continuing, and requesting that Keith submit to an examination under oath and produce a list of numerous

documents. The list included documents establishing income for the 12 months prior to the loss, four years of W-2 forms, monthly account statements for 12 months preceding the loss, and a list of debts and liabilities existing at the time of the loss.

Approximately a week after receiving Allstate's August letter, Keith sued Allstate for coverage and for damages under the Consumer Protection Act. Keith also filed a motion for a protective order. He asked the trial court to issue an order declaring that he had fully complied with the insurance policy; that he was not required to authorize Allstate to obtain credit reports and tax returns; and that he did not have to provide a list of his debts. The trial court denied his motion.

Allstate then moved for summary judgment. The trial court granted Allstate's motion and dismissed Keith's claims. He appeals.

■ We review a grant of summary judgment de novo and engage in the same inquiry as the trial court. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92, 993 P.2d 259 (2000). Summary judgment is proper if no genuine issue of material fact exists, viewing the evidence in a light most favorable to the nonmoving party. CR 56(c).

■ The Allstate policy at issue provides that an insured is required to submit a written claim for loss, including "all details reasonably required" by Allstate. It informs the insured that Allstate may require an examination under oath. The policy also prohibits the insured from suing Allstate for coverage "unless there is full compliance with all the policy terms."

The policy provision requiring an examination under oath before filing suit is a valid, enforceable contract provision. *Downie v. State Farm Fire & Cas. Co.*, 84 Wn. App. 577, 929 P.2d 484 (1997). In *Downie*, this court upheld the dismissal on summary judgment of the insured's lawsuit because he did not comply with such a provision. *Downie*, 84 Wn. App. at 582-83. Keith does not mention

*Downie* in his appeal brief nor does he explain why he was not bound to submit to an examination before commencing his lawsuit. Under *Downie*, Keith breached the policy by filing suit before he had submitted to an examination under oath.

■ An insured's breach of a cooperation clause releases the insurer from its responsibilities if the insurer was actually prejudiced by the insured's breach. *Kaplan v. N.W. Mut. Life Ins. Co.*, 100 Wn. App. 571, 578, 990 P.2d 991 (2000). When an insurer has sufficient information to suspect the possibility of a fraudulent claim and the financial condition of the insured is pertinent to the claim, the insurance company is actually prejudiced as a matter of law if the insured fails to provide such information. *See Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 725, 950 P.2d 479 (1997); *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 230, 961 P.2d 358 (1998).

Financial records of the insured are "relevant and material" once the insurance company has reason to broaden its investigation into the insured's possible financial motive for overvaluing or misrepresenting his claim. *Dien Tran*, 136 Wn.2d at 227. In both *Pilgrim* and *Dien Tran* the insurer was prejudiced as a matter of law because the lack of access to financial documents hampered its ability to evaluate the validity of the claim. *Pilgrim*, 89 Wn. App. at 725; *Dien Tran*, 136 Wn.2d at 231.

Allstate had sufficient reason to suspect that Keith had not actually purchased the car, and therefore, that his claim was fraudulent. At the time of the fire, Keith had not made any payments on the car and the title was still in the name of Bruce Rawlins. Keith claimed the car was a Rolls Royce, although the title of the car identified it as a 1962 Bentley, because some of the parts had been replaced with Rolls parts. A Rolls Royce has greater book value than a Bentley, a fact that also generated reasonable suspicion about Keith's claim.

■ ■ Because Keith maintained that he had an insurable interest in the car by virtue of a conditional sales

contract, Allstate was not in a position to deny coverage outright. Under *Coventry Associates v. American States Insurance Co.*, 136 Wn.2d 269, 279, 961 P.2d 933 (1998), an insurer owes a duty to conduct a reasonable investigation before denying coverage. In view of *Coventry* and in view of its statutory duty to "root out fraud," it was not unreasonable for Allstate to make its inquiries into Keith's financial condition. *Pilgrim*, 89 Wn. App. at 719; RCW 48.30A.045, .050.

Keith's financial condition around the time of the loss was relevant to show whether he had enough assets, not only to make the payments envisioned by the sales contract, but also to pay the estimated $9,000-$12,000 in state licensing fees he would incur once he became the titled owner of the car. Records demonstrating that Keith was in a prosperous and healthy financial condition would have helped to rule out a financial motive for making a false claim about his ownership of the car.

Keith's wage information for 1999, a list of his debts and liabilities at the time of the loss, credit reports and four years of W-2 forms would have reasonably assisted Allstate in evaluating Keith's financial condition. By refusing to supply such information, Keith breached the cooperation clause of his insurance contract. Under *Dien Tran* and *Pilgrim*, this breach prejudiced Allstate as a matter of law. The trial court did not err in granting summary judgment.

Keith also argues that because Allstate added the car to his policy after the fire when it was notified of the loss, and then continued to renew coverage after the fire, Allstate has waived its right to deny coverage for the loss. It appears that Keith is arguing that because he paid premiums for the Rolls Royce after the fire, Allstate was precluded from denying his claim. Keith cites no authority that supports this position, and we conclude that Allstate's subsequent acceptance of premiums did not waive its right to deny Keith's claim.

■ ■ Finally, Keith contends that even if his coverage claim was properly dismissed, his Consumer Protection Act

claim should remain viable. To establish a claim under the Consumer Protection Act, the plaintiff must demonstrate injury to his business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 792, 719 P.2d 531 (1986). Keith does not explain how he was injured by Allstate's conduct. This court does not consider claims that are insufficiently argued. *See State v. Elliott*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

Affirmed.

AGID, C.J., and WEBSTER, J., concur.