# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GROUP HEALTH COOPERATIVE, | No. 53381-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TERRI LYN HALL, a widow, | |
| Appellant. | |

SUTTON, J. — This appeal arises from Terri Lyn Hall's settlement of a personal injury lawsuit and Group Health Cooperative's efforts to investigate her claim to determine whether it had a right of reimbursement after paying over $83,000 in medical expenses resulting from her injuries. Hall asserted that Group Health had no right to reimbursement under well settled law because her settlement did not make her whole. Group Health sued Hall for reimbursement, claiming that she could not challenge the right to reimbursement because she had breached the duty to cooperate under the Medical Coverage Agreement (MCA) by failing to provide Group Health with information regarding her personal injury claim. Hall appeals the superior court's grant of summary judgment in favor of Group Health and the summary judgment dismissal of her counterclaims.

Hall argues that (1) being made whole is a condition precedent to a duty to cooperate under the MCA and because she was not made whole, a duty to cooperate never arose; (2) even if a duty to cooperate did arise, there are questions of fact as to whether she failed to cooperate; (3) genuine issues of material fact exist as to whether any breach of the cooperation provision prejudiced Group

Health; and (4) the court erred by dismissing her counterclaims because Group Health acted in bad faith and violated the Consumer Protection Act, chapter 19.86 RCW (CPA), in demanding reimbursement of the medical expenses paid.

We hold that (1) Hall's being made whole is not a condition precedent for a duty to cooperate to arise under the MCA. We further hold that (2) Hall and her attorney breached the duty to cooperate with Group Health in the MCA as a matter of law, and because that breach rendered Group Health unable to investigate her claim, Group Health was prejudiced as a matter of law. We also hold that (3) because Group Health properly pursued its right to reimbursement, the superior court correctly dismissed her counterclaims. Therefore, we affirm the superior court's summary judgment orders.

FACTS

I. BACKGROUND

A. THE ACCIDENT

On September 18, 2012, Hall fractured her right leg and her left pinky finger when she fell. On October 4, Hall informed Group Health of her fall and that she had filed a personal injury claim with the building owner's insurance company. On May 8, 2013, her attorney sent Group Health a letter informing Group Health that Hall had retained his firm to represent her in all matters arising from her fall.

B. THE MCA

Group Health is a Washington nonprofit corporation providing healthcare services in Washington. Hall contracted for medical coverage with Group Health beginning in January 2012, subjecting her to the provisions of the MCA.

No. 53381-2-II

The MCA contains a subrogation and reimbursement provision that gives Group Health the right to recover medical expenses paid on Hall's behalf from any third-party settlement:

> If [Group Health] provides benefits under this Agreement for the treatment of the injury or illness, [Group Health] will be subrogated to any rights that the Member may have to recover compensation or damages related to the injury or illness and the Member shall reimburse [Group Health] for all benefits provided, from any amounts the Member received or is entitled to receive from any source on account of such injury or illness, whether by suit, settlement or otherwise.

Clerk's Papers (CP) at 1269. However, the MCA also provided, "[Group Health]'s subrogation and reimbursement rights shall be limited to the excess of the amount required to fully compensate the Injured Person for the loss sustained, including general damages." CP at 1269.

The MCA required Hall and her attorney to cooperate in Group Health's efforts to collect its medical expenses by, among other things, giving Group Health information regarding the cause of her injuries or settlement:

> *The Injured Person and his/her agents shall cooperate fully with [Group Health] in its efforts to collect [Group Health]'s Medical Expenses.* This cooperation includes, but is not limited to, *supplying [Group Health] with information* about the cause of injury or illness, any potentially liable third parties, defendants and/or insurers related to the Injured Person's claim and *informing [Group Health] of any settlement* or other payments relating to the Injured Person's injury.

CP at 1269 (emphasis added). In addition, the MCA stated:

> If the Injured Person fails to cooperate fully with [Group Health] in recovery of [Group Health]'s Medical Expenses, *the Injured Person shall be responsible for directly reimbursing [Group Health] for 100% of [Group Health]'s Medical Expenses*.

CP at 1270 (emphasis added).

3

The MCA also stated:

> To the extent that the Injured Person recovers funds from any source that may serve to compensate for medical injuries or medical expenses, *the Injured Person agrees to hold such monies in trust* or in a separate identifiable account until [Group Health]'s subrogation and reimbursement rights are fully determined and that [Group Health] has an equitable lien over such monies to the full extent of [Group Health]'s Medical Expenses and/or the Injured Person agrees to serve as constructive trustee over the monies to the extent of [Group Health]'s Medical Expenses.

CP at 1270 (emphasis added).

Finally, the MCA provided that "under certain conditions" Group Health would "reduce the amount of reimbursement to [Group Health] by the amount of an equitable apportionment" of attorney's fees so long as Hall provided Group Health with "a list of the fees and associated costs before settlement" and "the Injured Person's attorney's actions were reasonable and necessary to secure recovery." CP at 1270.

C. HALL'S PERSONAL INJURY SETTLEMENT AND GROUP HEALTH'S REQUESTS FOR INFORMATION

In a May 2013 letter, Group Health informed Hall's attorney of its subrogation rights and that it was "entitled to reimbursement for medical treatment given . . . where the patient obtains a settlement or judgment against [a] third party." CP at 1296. Group Health told Hall's attorney that Group Health "may be willing to pay a portion of your attorneys' fees" and that he "should contact us if you believe such an arrangement would be appropriate." CP at 1297. Group Health concluded by asking that Hall's attorney "not take any action to prejudice the rights of Group Health and also that you contact us prior to any settlement." CP at 1297.

In December 2014, Hall filed suit against the owner of the building where she fell, Labor 1992 Corporation. Between August 2013 and February 2016, Group Health sent 11 letters to

Hall's attorney, reminding them of Group Health's subrogation claim, providing an updated list of providers that Group Health had paid on Hall's behalf, and requesting that Hall's attorney keep Group Health informed of any settlement negotiations with Labor 1992 Corporation. Group Health ultimately informed Hall that it had paid a total of $83,580.66 in medical expenses.

On March 18, 2016, Hall's attorney informed Group Health's third party specialist Pamela Henley that Hall had a mediation with Labor 1992 Corporation set for March 23, and asked whether Group Health would accept $5,000 to release its subrogation claim. Group Health rejected this offer and asked Hall's attorney to contact Group Health during the mediation. Hall's attorney failed to do so.

On March 30, Hall's attorney called Henley to tell her that Hall intended to accept a post-mediation settlement offer of $600,000, and that they did not think Hall had been fully compensated because her special damages exceeded $600,000. Hall did not provide any details or supporting documentation.

Hall's economic damages expert's report stated that Hall had nearly lost $484,199 in past and future income as a result of the fall. The expert's estimate was based on Hall's representation that, as a result of the fall, she was forced to retire from her position as a Department of Labor and Industries (L&I) Workers' Compensation Adjudicator, and that, but for the fall, she would have worked until 2019. Hall had worked at L&I for almost 30 years when she fell, and turned 60 years old two months after her fall.

On April 5, 2016, Hall executed a settlement agreement with Labor 1992 Corporation. Hall accepted $600,000 in exchange for "releas[ing] and forever discharg[ing]" Labor 1992 Corporation from "all claims . . . resulting from the accident." CP at 1172. Hall further agreed to

hold Labor 1992 harmless from all subrogated claims and claims for reimbursement, and "to pay and fully resolve all outstanding health care expenses, liens, attorney fees and expenses, subrogation claims and claims for reimbursement, related to the described accident or event, from money received in this settlement." CP at 1172.

The same day, April 5, Group Health's attorney sent Hall's attorney a letter stating that he was representing Group Health. The letter stated that Hall was "not authorized to release any of the funds at issue [with] Group Health's subrogation claim." CP at 1201 (emphasis omitted). Hall's attorney responded immediately, denying that Group Health "has any right of reimbursement," withdrawing Hall's previous offer of $5,000 to release any subrogation claim, and threatening to sue Group Health under the CPA. CP at 1203.

On April 27, Group Health's attorney again wrote to Hall's attorney, asserting that Hall had been fully compensated by the settlement and thus, Group Health was "entitled to be reimbursed for the amounts it expended for Ms. Hall's medical care." CP at 1207. Group Health's attorney explained that its decision was based on Group Health's claim file and "the information made available to us to date," and that if Hall disagreed with his determination, she should "provide additional evidence," including "a copy of your mediation statement, as well as all materials provided to the mediator, copies of medical records, expert reports and any other information you believe supports your position." CP at 1207. That same day, Hall's attorney disbursed the settlement funds from his trust account to Hall, withholding only $45,002.91, the amount Hall's attorney asserted Group Health would be entitled to if it had a claim for reimbursement. Hall and her attorney did not provide Group Health any additional information.

On May 3, Hall's attorney emailed Group Health's attorney, asserting that the settlement did not fully compensate Hall because "she had a long history of preexisting [injuries]" and "there were facts supporting comparative fault." CP at 1209. Hall's attorney again threatened to sue Group Health under the CPA, and to seek CR 11 sanctions against Group Health's attorney. On May 5, Group Health's attorney again asked for the records specified in his April 27 letter. Hall and her attorney again did not provide them.

On June 10, 2016, Group Health's attorney again wrote to Hall's attorney. The letter stated that Hall's failure to provide the requested information was a violation of her duty to cooperate under the MCA, and therefore, under the MCA, Hall and her attorney were required to reimburse Group Health for the full amount of any benefits paid. Group Health's attorney asked that Hall's attorney contact him within a week to discuss Group Health's reimbursement claim. Hall's attorney never responded or provided Group Health the requested information.

## II. PROCEDURAL HISTORY

Group Health filed a complaint on September 16, 2016, seeking a declaratory judgment of $83,580.66 to reimburse it for medical expenses it paid related to Hall's personal injury claim. The complaint alleged that Hall failed to cooperate, breached the MCA, and prejudiced Group Health. Hall counterclaimed for breach of contract, bad faith, and violation of the CPA.

During discovery, Hall and her attorney produced her medical records and expert reports addressing the injuries purportedly caused by her fall. Hall's medical records disclosed that she had a long history of problems with her right leg, including numerous knee surgeries as early as 1969.

Hall also produced a CR 35 independent medical examination performed on February 12, 2016, by Dr. Sean Ghidella, a board certified orthopedic surgeon. The examination found that "[Hall] could have resumed work." CP at 1101. The examination found that she had "healed her [leg] fracture, and this has contributed very little to her current symptomatology, if any at all," and that the fracture of her left pinky finger had healed and "would not require any restrictions whatsoever." CP at 1101. The examination also found that Hall did not "suffer from any permanent partial disability due to any of the injuries sustained in [the] incident," but rather that her right leg "was already extremely compromised based on her prior surgeries," and that "she has had a complex history, and many very rare and unusual procedures." CP at 1101. The examination further found that the surgeries performed on Hall after her fall, which were the basis for the majority of the expenses paid by Group Health, were "medically necessary and causally related to the event in question." CP at 1100.

Group Health filed a motion for summary judgment, arguing that Hall breached her duty to cooperate by refusing to provide any of the information Group Health requested, and thus, she was required to reimburse Group Health for all of its medical expenses. It also requested dismissal of Hall's counterclaims. The superior court granted summary judgment ruling that "based on the undisputed facts and the case law . . . Ms. Hall has not fully cooperated" and dismissed her claim with prejudice and entered judgment for Group Health in the amount of $83.329.66. Verbatim Report of Proceedings (VRP) (Nov. 2, 2018) at 76-77. The superior court also dismissed Hall's counterclaims. Hall appeals the superior court's summary judgment orders.

8

ANALYSIS

I. LEGAL PRINCIPLES

A. SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371, *review denied*, 195 Wn.2d 1031 (2020). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Mackey*, 12 Wn. App. 2d at 569. But if there are genuine issues of material fact, then the order granting summary judgment must be overturned. CR 56(c); *Mackey*, 12 Wn. App. 2d at 569. There is a genuine issue of material fact when reasonable minds could disagree on the facts controlling the outcome of the litigation. *Mackey*, 12 Wn. App. 2d at 569.

The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Mackey*, 12 Wn. App. 2d at 569. A moving defendant can meet this burden by demonstrating that the plaintiff cannot support his or her claim with any evidence. *Mackey*, 12 Wn. App. 2d at 569. After the defendant has made such a showing, the burden shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. *Mackey*, 12 Wn. App. 2d at 569. Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial. *Mackey*, 12 Wn. App. 2d at 569.

When an appeal arises out of an order granting summary judgment, we engage in the same inquiry as the trial court. *Group Health Coop. v. Coon*, 193 Wn.2d 841, 849, 447 P.3d 139 (2019). Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). "'All facts and reasonable

inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo.'" *Coon*, 193 Wn.2d at 849-50 (quoting *Mountain Park Homeowners Ass'n v. Tydings,* 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)).

B.  FULL COMPENSATION RULE

Interpretation of an insurance contract is a question of law that we review de novo. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007).

In *Coon*, our Supreme Court reiterated that

while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a [tortfeasor] responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is *fully compensated* for the loss.

193 Wn.2d at 850 (alteration in original) (quoting *Thiringer v. Am. Motors Ins. Co*., 91 Wn.2d 215, 219, 588 P.2d 191 (1978)).  "This 'made whole' principle 'embodies a policy deemed socially desirable in this state.'" *Coon*, 193 Wn.2d at 850 (quoting *Thiringer*, 91 Wn.2d at 220).  This rule applies to health insurance policies.  *Coon*, 193 Wn.2d at 854.

"Settlement for less than the tortfeasor's policy limits does not create a presumption of full compensation."  *Coon*, 193 Wn.2d at 855.  "Instead, acceptance of a settlement is simply *some evidence* that the insured has been full compensated."  *Coon*, 193 Wn.2d at 855.  "An insurer is entitled to an offset, setoff, or reimbursement when both: (1) the contract itself authorizes it and (2) the insured is fully compensated by the relevant 'applicable measure of damages.'" *Sherry v. Fin. Indem. Co.*, 160 Wn.2d 611, 619, 160 P.3d 31 (2007) (quoting *Barney v. Safeco Ins. Co. of Am.,* 73 Wn. App. 426, 429, 869 P.2d 1093 (1994)).

If the insured breaches the contract, the insurer has a remedy, but only if there is prejudice to the insurer from the insured's breach. *Coon*, 193 Wn.2d at 858. The insurer has the burden of proof to demonstrate prejudice by the insured's actions. *Coon*, 193 Wn.2d at 857. "'To establish prejudice, the insurer must show concrete detriment . . . together with some specific harm to the insurer caused thereby.'" *Coon*, 193 Wn.2d at 857 (alteration in original) (internal quotation marks omitted) (quoting *Pilgrim v. State Farm Fire & Cas. Co*., 89 Wn.2d 712, 724-25, 950 P.2d 479(1997)). "Determining prejudice from a policy breach is a question of fact for the jury and 'will seldom be established as a matter of law.'" *Coon*, 193 Wn.2d at 857 (quoting *Tran v. State Farm Fire & Cas. Co*, 136 Wn.2d 214, 228, 961 P.2d 358 (1998)).

## II. BREACH OF DUTY TO COOPERATE

Hall argues that the superior court erred by granting summary judgment in favor of Group Health based on a finding that she breached the duty to cooperate. She argues that full compensation was a condition precedent to the duty to cooperate, she was not fully compensated, there are genuine issues of material fact as to whether she breached the duty to cooperate, and whether any breach of the duty to cooperate prejudiced Group Health. We disagree.

### A. EXISTENCE OF DUTY TO COOPERATE

"[T]o determine the scope of [an insured's] duty to cooperate with the insurer, we must first look to the relevant policy language." *Tran*, 136 Wn.2d at 225.

Here, the MCA expressly required Hall and her attorney to "*cooperate fully* with [Group Health] in its efforts to collect [Group Health]'s Medical Expenses." CP at 1269 (emphasis added). This cooperation included providing information related to the cause of her injuries, any potential third party liability and applicable insurance, promptly informing Group Health of any settlement,

11

and not settling the claim without protecting Group Health's interest.  The MCA also required Hall

and her attorney to do nothing to prejudice Group Health's right of subrogation or reimbursement,

and hold in trust any recovered monies as a constructive trustee.

We hold that the superior court correctly found that Hall and her attorney had a duty to

cooperate under the MCA.  We next address whether the MCA requires that Hall be made whole

as a condition precedent to a duty to cooperate.

## B.  "MADE WHOLE" IS NOT A CONDITION PRECEDENT TO THE DUTY TO COOPERATE

Hall argues that being made whole is a condition precedent for a duty to cooperate to arise

under the MCA.  We disagree because the MCA does not require that Hall be made whole prior to

a duty to cooperate with Group Health.

Whether an insured has been "made whole" is determined "by the relevant 'applicable

measure of damages.'"  *Sherry*, 160 Wn.2d at 619 (quoting *Barney*, 73 Wn. App. at 429).  "A

condition precedent is an event occurring after the making of a valid contract which must occur

before a right to immediate performance arises."  *Jones Assocs., Inc. v. Eastside Properties, Inc*.,

41 Wn. App. 462, 466, 704 P.2d 681 (1985).  "'Whether a provision in a contract is a condition,

the nonfulfillment of which excuses performance, depends upon the intent of the parties, to be

ascertained from a fair and reasonable construction of the language used in the light of all the

surrounding circumstances.'"  *Jones*, 41 Wn. App. at 466-67 (quoting *Ross v. Harding*, 64 Wn.2d

231, 236, 391 P.2d 526 (1964)).  "'An intent to create a condition is often revealed by such phrases

and words as "provided that," "on condition," "when," "so that," "while," "as soon as," and

"after."'"  *Jones*, 41 Wn. App. at 467 (quoting *Vogt v. Hovander*, 27 Wn. App. 168, 178, 616 P.2d

12

660 (1979)). "Where it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise." *Jones*, 41 Wn. App. at 467.

The MCA requires that Hall and her attorney "shall cooperate fully with [Group Health] in its efforts to collect [Group Health]'s Medical Expenses." CP at 1708. Hall acknowledges that assessing whether she was made whole is a prerequisite to Group Health determining whether it has a right to reimbursement, and thus a necessary part of Group Health's "efforts to collect or recover its Medical Expenses." Appellant's Opening Br. at 22.

Construing Hall's duty to cooperate as arising only after she has been fully compensated would nullify the duty to cooperate clause and Group Health's right to reimbursement. "'An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective.'" *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014) (quoting *Seattle–First Nat'l Bank v. Westlake Park Assocs.,* 42 Wn. App. 269, 274, 711 P.2d 361 (1985)). If insureds are not required to cooperate until an insurer proves they have been made whole, an insured's duty of cooperation would never arise because an insurer cannot prove the insured has been made whole without the insured's cooperation.

No language in the MCA conditions a duty to cooperate on Hall being made whole. Hall's argument would negate her duty to cooperate because, as the superior court recognized, Group Health could not prove Hall had been "made whole" without the information Hall refused to provide so that Group Health could assess her claim that she was not made whole. Accordingly, Hall and her attorney were required to cooperate with Group Health's efforts to gather information

13

to evaluate whether Hall had been made whole including by providing "information about the cause of injury." CP at 1708.

The MCA contains no conditional qualifiers on a duty to cooperate, nor does it in any way reference the language limiting Group Health's reimbursement "to the excess of the amount required to fully compensate" Hall. CP at 1708. Moreover, the MCA states that an insured who "recovers funds from any source that may serve to compensate for medical injuries or medical expenses" must "hold such monies in trust or in a separate identifiable account until [Group Health]'s subrogation and reimbursement rights are fully determined." CP at 1709. This language underscores that a duty to cooperate arose when Hall received the settlement funds, and that it was not conditioned on Group Health proving that she had been made whole.

The superior court correctly rejected Hall's interpretation of the MCA because of the impossible scenario it required Group Health to resolve in order to assert its right to reimbursement: "how is it that Group Health meets its burden of showing that your client was not fully compensated, if there is no obligation on your client's part to cooperate with Group Health?" VRP (Nov. 2, 2018) at 62.

We hold that the superior court correctly ruled that a duty to cooperate is not a condition precedent of Hall being made whole by the settlement. We next address whether there was a breach of the MCA.

C.  HALL'S BREACH OF THE DUTY TO COOPERATE

Hall argues that she did not breach the duty to fully cooperate under the MCA.  We disagree.

"The only limitation on the requirement that insureds cooperate with the insurer's investigation is that the insurer's requests for information *must be material* to the circumstances giving rise to liability on its part."  *Tran*, 136 Wn.2d at 224 (emphasis added).  "Information is material when it 'concerns a subject relevant and germane to the insurer's investigation as it was then proceeding' at the time the inquiry was made."  *Tran*, 136 Wn.2d at 224 (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2nd Cir. 1984)).

Our Supreme Court has held that a court at summary judgment can determine that an insured breached its duty to cooperate as a matter of law.  In *Tran*, our Supreme Court held that an insured breached his duty to cooperate as a matter of law when he refused to provide his homeowner's insurer with requested personal and business financial records necessary to investigate his claim seeking payment for stolen items.  136 Wn.2d at 226-28.  The court reasoned that "no reasonable juror could conclude that Tran substantially cooperated in the investigation or settlement of his claim" and that his conduct "'constitutes a breach of the cooperation clause as a matter of law.'"  *Tran*, 136 Wn.2d at 228 (quoting *Pilgrim*, 89 Wn. App. at 723).

Here, Hall's contractual duty to cooperate must be interpreted in light of the "made whole" provision of the MCA and Washington law governing an insurer's subrogation rights.  Under the MCA, as soon as Hall settled her claim and recovered the amount of her loss, Group Health was entitled to reimbursement from the excess over the amount necessary to make her whole.  *See* CP 1708 (Group Health has reimbursement rights in "the excess of the amount required to fully

compensate the Injured Person for the loss sustained."). After it has been determined that the contract authorizes reimbursement, we address whether an insured has been "made whole" as determined "by the relevant 'applicable measure of damages.'" *Sherry*, 160 Wn.2d at 619 (quoting *Barney,* 73 Wn. App. at 429).

Hall asserts that Group Health had enough information necessary to determine whether it had a right of reimbursement. Hall's argument that she was not made whole is based on her preexisting disabilities before the September 18, 2012 fall, including prior knee surgeries. She also claims that as a result of the fall, she could not work anymore and had to retire early from L&I.

But Group Health was not required to simply accept Hall's assertions without being able to receive information from Hall and her attorney to properly evaluate whether she had been made whole. Hall admitted that "she had a long history of preexisting injur[ies]." CP at 1209. Group Health also questioned Hall's expert's projected economic loss in the amount of $484,199 in light of her preexisting conditions and her claim that she had to retire early as a result of the fall. Once notified of the settlement, Group Health reasonably requested that Hall produce information related to the cause of her injuries, including her mediation statement, the materials provided to the mediator, her medical records, and expert reports.

It is undisputed that Hall and her attorney refused to provide Group Health with any of the requested information. Instead, Hall and her attorney denied that Group Health had any right to reimbursement, threatened Group Health with litigation, and threatened Group Health's counsel and his law firm with CR 11 sanctions. Hall's attorney disbursed all of the settlement funds except for roughly half ($45,002.91) of the disputed settlement amount ($83,580.66), despite a duty to

16

hold settlement funds "in trust . . . until [Group Health]'s subrogation and reimbursement rights are fully determined." CP at 1709.

While Hall and her attorney continued to assert that Group Health's claim file "shows a voluminous amount of information," Hall and her attorney still had a duty to fully cooperate. Appellants Opening Br. at 28. Group Health's claim file shows only that Group Health was generally aware Hall had a history of significant health problems, because her attorney "read off" records to Group Health's counsel when making Hall's settlement offer to have Group Health release its subrogation claim in exchange for $5,000. CP at 1806, 1883.

Between May 2013 and February 2016, Group Health sent numerous letters to Hall's attorney, seeking information about Hall's injuries, the cause, and any potentially liable third party. Hall did not respond to these letters. Consistent with her argument that she did not owe any duty to cooperate until she was made whole, Hall and her attorney repeatedly refused to provide Group Health any records, including the economic expert report based on her preexisting medical conditions and her independent medical examination, which rebutted Hall's claims. Thus, despite requesting the information from Hall, Group Health did not have the information it needed to evaluate Hall's subrogation claim.

Group Health met its initial burden of production to show that it was undisputed that Hall and her attorney failed to cooperate and breached the MCA. The burden then shifted to Hall to present sufficient evidence to establish a genuine issue of material fact, which she failed to do. *Mackey*, 12 Wn. App. 2d at 569. Hall's bare allegations are insufficient to create a genuine issue of material fact at summary judgment. *Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 657, 336 P.3d 1112 (2014).

17

Because Group Health met its initial burden of production, and Hall failed to present sufficient evidence to raise a genuine issue of material fact as to her failure to cooperate, we hold that the superior court correctly determined that Hall breached the duty to cooperate as a matter of law. We next address whether Group Health was prejudiced by Hall's breach.

D. PREJUDICE FROM BREACH

Hall argues that the superior court erred by determining that Group Health was prejudiced as a matter of law by the breach of the MCA.[1] We disagree.

Prejudice can "be established as a matter of law" when, as here, the insurer shows "specific harm" from the insured's refusal to cooperate. *Tran*, 136 Wn.2d at 228; *Pilgrim*, 89 Wn. App. at 725. "An insured's breach of a cooperation clause releases the insurer from its responsibilities if the insurer was actually prejudiced by the insured's breach." *Tran*, 136 Wn.2d at 228. "Claims of actual prejudice require 'affirmative proof of an advantage lost or disadvantage suffered as a result of the [breach], which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability.'" *Tran*, 136 Wn.2d at 228-29 (alteration in original) (quoting *Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 491-92, 918 P.2d 937 (1996)).

Although prejudice "will seldom be established as a matter of law," Washington courts have repeatedly held that a breach of the duty to cooperate prejudices an insurer as a matter of law

---

[1] Hall argues for the first time in her reply brief that "Judicial estoppel prevents [Group Health] from now claiming it is prejudiced for not receiving information that it previously claimed to the trial court was 'not relevant to the current subrogation claim.'" Appellant's Reply Br. at 1 (emphasis removed) (quoting CP at 962-63). Arguments raised and argued for the first time in a reply brief are too late to warrant consideration. *Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Accordingly, we decline to address this argument.

when it "impede[s] [the insurer's] ability to investigate the claim." *Tran*, 136 Wn.2d at 228, 231.

In *Tran*, for example, our Supreme Court held that the insurer was prejudiced as a matter of law

because the lack of access to financial documents "prevent[ed] it from completing its investigation

to determine if its insured's claim was fraudulent." 136 Wn.2d at 233. The court explained the

impossible situation in which an insured places an insurer when it refuses to provide information

necessary to the insurer's investigation:

> Without being able to examine Tran's financial records, State Farm . . . was faced
> with a Hobson's choice of either denying a suspected fraudulent claim without an
> adequate investigation, which could expose it to claims of bad faith or violation of
> the [CPA], or paying a suspected fraudulent claim, which would be against public
> policy.

*Tran*, 136 Wn.2d at 230 (footnotes omitted).

Other cases also affirm the grant of summary judgment to a first party insurer where, as

here, the insured prejudiced the insurer by impeding its efforts to investigate the facts underlying

the insured's claim. For example, we held that an insured's refusal to provide financial records,

including tax returns and a list of debts and liabilities, prejudiced the insurer as a matter of law

because the insurer could not investigate whether the insured had the financial resources to

purchase the Rolls Royce he claimed was destroyed or whether he had "a financial motive for

making a false claim" in *Keith v. Allstate Indem. Co.*, 105 Wn. App. 251, 256, 19 P.3d 1077 (2001).

Likewise in *Pilgrim*, the insured's "refusal to disclose relevant financial information prejudiced

State Farm as a matter of law" because the insurer was unable "to complete its investigation of the

facts underlying the [insured's] claim" that nearly $150,000 in personal property had been stolen.

89 Wn. App. at 725.

Here, it is undisputed that Hall and her attorney refused to provide information Group Health requested regarding Hall's claim, including mediation statements, medical reports related to her preexisting conditions, whether any third party was liable, and information related to any comparative fault by Hall. Group Health requested this information under the MCA to investigate whether Hall was made whole as a result of the $600,000 settlement with Labor 1992 Corporation. Later during discovery, Group Health discovered that the independent medical examination obtained by Labor 1992 Corporation found that, contrary to Hall's assertion that she was forced to retire as a result of the fall, Hall "could have resumed work." CP at 1101. It also discovered that the independent medical examination found that Hall's right leg was not disabled as a result of the fall, but that her leg "was already extremely compromised based on her prior surgeries" which was consistent with her preexisting conditions and medical history. CP at 1101.

Without access to this information, Group Health was unable to investigate Hall's assertion that she was not made whole and that Group Health had no "right of reimbursement based . . . [on] the facts of this case." CP at 1203. Had Hall produced any of the requested information, Group Health could have evaluated Hall's claim and had its questions about Hall's claims answered, including "why couldn't she return to [work] ," "was she planning on retirement anyways," and "[h]ow long is this forecasted for future wage loss?" CP at 1804.

As a matter of policy and equity, our courts have consistently rejected results that would "encourag[e] insureds to not cooperate." *Tran*, 136 Wn.2d at 231. The Supreme Court in *Tran* rejected the notion that insurers should be forced to either forego their right to reimbursement or sue their insureds based on limited information. 136 Wn.2d at 228-29. The court recognized that

doing so results in insurers incurring not only the costs of litigation but exposing them to claims of bad faith and CPA violations which is exactly what happened here. *Tran*, 136 Wn.2d at 230.

Group Health could not evaluate whether Hall had been made whole by the settlement in order to determine whether it had a right to reimbursement. The actions by Hall and her attorney constitute prejudice as a matter of law. *See Tran*, 136 Wn.2d at 228-29.

At summary judgment, Group Health met its initial burden to show that there were no genuine issues of material fact, and the burden shifted to Hall to rebut this evidence, which she failed to do. Group Health established by undisputed facts that it was prejudiced by the actions of Hall and her attorney.

Because Group Health was prejudiced as a matter of law, the superior court correctly held that Hall is "responsible for directly reimbursing [Group Health] for 100 [percent] of [Group Health]'s Medical Expenses" under the MCA. CP at 1270. We agree and hold that the superior court correctly determined that Hall prejudiced Group Health as a matter of law and Group Health was entitled to the entry of judgment for the amount it paid to Hall for her medical expenses.

### III.  DISMISSAL OF HALL'S COUNTERCLAIMS

Hall argues that the superior court also erred by dismissing her counterclaims on partial summary judgment because Group Health acted in bad faith, which Hall claims is a "per se" CPA violation. We disagree and hold that the superior court did not err.

To succeed in a bad faith claim, "the insured must show the insurer's breach of the insurance contract was 'unreasonable, frivolous, or unfounded.'" *Overton v. Consol. Ins. Co*., 145 Wn.2d 417, 433, 38 P.3d 322 (2002) (quoting *Kirk v. Mt. Airy Ins. Co.,* 134 Wn.2d 558, 560, 951 P.2d 1124 (1998). "Harm . . . is an essential element" of a bad faith claim and an insurer is entitled

to summary judgment "if a reasonable person could only conclude that the insured suffered no harm." *Werlinger v. Clarendon Nat'l Ins. Co.*, 129 Wn. App. 804, 808, 120 P.3d 593 (2005).

To prevail in a CPA claim, a plaintiff must prove the following: "'(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'" *Mellon v. Regional Trustee Services Corp.*, 182 Wn. App. 476, 487-88, 334 P.3d 1120 (2014) (alteration in original) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

Hall first asserts that Group Health breached its duty to evaluate her $5,000 settlement offer to resolve the reimbursement issue as though it "bore the entire risk," ignoring that the duty to cooperate applies in the context of defending and indemnifying an insured from a third party. Appellant's Opening Br. at 39 (citing *Truck Ins. Exch. of Farmers Ins. Group v. Century Indem. Co.*, 76 Wn. App. 527, 534, 887 P.2d 455 (1995)). Here, the settlement offer was from Hall, not a third party, and Group Health did not act in bad faith by rejecting Hall's settlement requiring it to forfeit its contractual right to reimbursement.

Hall next claims that Group Health "misrepresented a pertinent fact" in its letter to her attorney by informing her that it was "entitled to reimbursement for its medical treatment" because it failed to also inform her that Group Health's right to reimbursement arose after she was "fully compensated." Appellant's Opening Br. at 40-41. But in a letter sent before the one cited by Hall, Group Health told Hall that it would have the right to reimbursement "if the at-fault party is liable and the at-fault party has sufficient assets to compensate you." CP at 112. Hall fails to explain how she was damaged by this alleged misrepresentation, given that her attorney was aware of the "made whole" doctrine.

Hall then claims that Group Health acted in bad faith by "seeking reimbursement of the entire $83,580.66" rather than reducing its claim to pay a portion of Hall's attorney fees. Appellant's Opening Br. at 42-43. The MCA clearly provides that if Hall "fail[ed] to cooperate fully with [Group Health] in recovery of [Group Health]'s Medical Expenses," then she would be "responsible for directly reimbursing [Group Health] for 100 [percent] of [its] Medical Expenses." CP at 1270. Further, under the MCA, Hall's cooperation was a necessary prerequisite to any apportionment of attorney fees. CP at 1297, 1709. Because Hall refused to cooperate, she had no right to attorney fees under the MCA.

Hall's assertion that she was forced to sue Group Health "in order to gain the benefits of the contract" is also flawed. Appellant's Opening Br. at 44. Group Health paid $83,580.66 for Hall's medical expenses promptly and without question. Group Health then requested that Hall and her attorney provide it with information necessary for Group Health to determine whether Hall had been fully compensated for her injuries. Hall and her attorney refused to provide that information, forcing Group Health, not Hall, to sue for a declaratory judgment to gain the benefit of its contract.

Hall claims bad faith is a "per se" violation of the CPA. Our courts have previously rejected this argument. *Villegas v. Nationstar Mortgage, LLC*, 8 Wn. App. 2d 878, 895, 444 P.3d 14 (2019).

Hall next claims that Group Health engaged in deceptive "collection activities," citing *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 65, 204 P.3d 885 (2009). The record does not support Hall's claim. Group Health never told Hall that Group Health had commenced a collection proceeding against her; instead, Group Health requested that Hall's attorney "please contact [Group Health] . . . to discuss . . . reimbursement." CP at 1218, 1213 (Group Health's attorney wrote, "I have not received any of the records I requested in my last letter . . . . When will you be providing me the requested information?").

Group Health did not act improperly by asking Hall to cooperate with its investigation of its right to reimbursement or by filing this action when Hall and her attorney refused to cooperate. Group Health did not act in bad faith because it was within its right to pursue its right to reimbursement under the policy and to request information from Hall and her attorney in order to investigate and determine whether Hall had been fully compensated. Because Hall fails to show that Group Health violated the CPA, we hold that the superior court correctly dismissed Hall's counterclaims.[2]

## CONCLUSION

We hold that (1) Hall's being made whole is not a condition precedent for a duty to cooperate to arise under the MCA. We further hold that (2) Hall and her attorney breached the duty to cooperate with Group Health in the MCA as a matter of law, and because that breach rendered Group Health unable to investigate her claim, Group Health was prejudiced as a matter

---

[2] Hall requests an award of appellate attorney fees and costs under RAP 18.1, RCW 19.86.090, *McRory v. N. Ins. Co. of New York*, 138 Wn.2d 550, 980 P.2d 736 (1999), and *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Because Hall does not prevail on appeal, she is not entitled to an award of appellate fees and costs, and we deny her request.

No. 53381-2-II

of law. We also hold that (3) because Group Health properly pursued its right to reimbursement, the superior court correctly dismissed her counterclaims. Therefore, we affirm the superior court's summary judgment orders.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

I concur:

, C.J.

LEE, C.J.

MAXA, J. (dissenting in part) – I agree with the majority opinion that Terri Lyn Hall did have a duty to cooperate under Group Health Cooperative's Medical Coverage Agreement (MCA) and that her full compensation from her personal injury settlement was not a condition precedent to that duty. I also agree that the trial court did not err in dismissing Hall's counterclaims. However, under the undisputed facts of this case, clear questions of fact exist as to whether Hall breached her duty to cooperate and as to whether any such breach prejudiced Group Health. Therefore, the majority opinion wrongly affirms the trial court's grant of summary judgment in favor of Group Health.

Group Health's narrative on appeal regarding breach is that it repeatedly requested that Hall provide information about her claim, and Hall refused. Group Health's narrative on appeal regarding prejudice is that it was unable to evaluate whether it had a right to reimbursement from Hall's settlement because of Hall's failure to provide information about her claim. The evidence presented in the trial court tells a different story.

1.  Communications from Group Health

Following Hall's notice that she intended to settle, Group Health's attorney sent three letters and one email to Hall's attorney. None of those communications stated that Group Health needed information from Hall in order to determine whether it had a right to reimbursement.

a.  April 5, 2016 Letter

The first letter was dated April 5, 2016. In that letter, Group Health's attorney stated that he would review the file and would be in touch. The letter did not request any information from Hall.

Significantly, Group Health's attorney later claimed in a June 10, 2016 letter (discussed below) that "[i]n my letter of April 5, 2016, I requested that you provide our office with certain information in support of your claim for a reduction in Group Health's subrogation claim." Clerk's Papers (CP) at 1217. That statement was false.

    b.    April 27, 2016 Letter

The second letter was dated April 27, 2016. The letter began by noting that Hall had settled for less than available policy limits, and that such a settlement was evidence that she had been fully compensated.[3] The letter discussed two cases in which the courts ruled that an injured person had been fully compensated by a settlement for less than policy limits. The letter then stated, "[Y]ou and Ms. Hall were aware of Group Health's subrogation claim, and also knew of the attorney fees and costs that would have to be deducted from any settlement amount. *If the settlement offer did not reflect what you believed to be full compensation, then you did not have to accept it.* You could have, instead, had the question of full compensation decided through trial." CP at 1207 (emphasis added).

Finally, the letter expressly asserted that Group Health was entitled to reimbursement: "Based on the information I have been provided and the above-cited case law, *it is Group Health's position* that Group Health is entitled to be reimbursed for the amounts it expended for Ms. Hall's medical care." CP at 1207 (emphasis added).

In conclusion, the letter stated,

Our position is based upon the information made available to us to date. *Should you wish to provide additional evidence to support your claim for a reduction in Group Health's subrogation claim, we would, of course, be willing to review the*

---

[3] Hall's settlement was for $600,000. The tortfeasor's policy limits were $2 million.

> *same.* Information which would be helpful in that review would be a copy of your mediation statement, as well as all materials provided to the mediator, copies of medical records, expert reports and any other information you believe supports your position.

CP at 1207 (emphasis added).

### c. May 5, 2016 Email

On May 5, 2016, Group Health's attorney sent an email to Hall's attorney. The email stated, "I have not received any of the records I requested in my last letter to you. When will you be providing me the requested information?" CP at 1213. This email was somewhat misleading. Group Health's attorney did not specifically request records from Hall's attorney in the April 27 letter. He stated that *if* Hall's attorney *wished* to provide additional information, Group Health would review it.

### d. June 10, 2016 Letter

Group Health's final letter before filing suit was dated June 10, 2016. The letter stated that Group Health's attorney had not received information requested in the April 5 letter and the May 5 email. The letter quoted the cooperation provision in the MCA and related provisions, and stated,

> As a result of the foregoing, your client has failed to cooperate fully with Group Health in regard to this claim and is in violation of the terms of her policy. Said policy violations include, but are not limited to:
>    1. Failure to promptly notify Group Health of a tentative settlement;
>    2. Prejudicing Group Health's rights to reimbursement; and
>    3. Failure to cooperate with Group Health and provide requested information.
> Accordingly, your client's policy requires that you and your client directly reimburse Group Health for the full amount of any benefits paid on her behalf to date.

CP at 1218. The letter did not state that any additional information would change Group Health's position.

    2.    Breach of Duty to Cooperate

Group Health claims that Hall breached her duty to cooperate because Group Health expressly requested that she provide information about her claim and she refused. But there is at least a question of fact as to whether Group Health actually requested such information.

As noted above, the April 5 letter did not request any information despite Group Health's later claim that it did. And in the April 27 letter, Group Health did not *request* that Hall provide any information. Instead, Group Health's attorney took a firm position that Group Health was entitled to reimbursement because Hall had settled for less than the tortfeasor's insurance policy limits. The letter then stated that *if* Hall's attorney *wished* to provide additional information, Group Health would review it. In other words, Group Health had made its decision. But if Hall wanted Group Health to change its position, Hall would have to provide additional information.

The May 5 email asked when Hall's attorney would be providing the requested information. But this email must be read in light of the April 27 letter. Again, that letter did not request any information; it merely invited Hall's attorney to provide it if Hall wanted Group Health to change its position.

The actual language of Group Health's letters creates a question of fact as to whether Group Health requested that Hall provide information and therefore whether Hall failed to cooperate by disregarding that request. There is evidence that Hall merely declined Group Health's *invitation* to provide additional information, which a jury could find did not breach the duty to cooperate.

3. Prejudice from Breach

Even if Hall breached the cooperation provision, Group Health is entitled to a remedy only if the breach caused prejudice. *Group Health Coop. v. Coon*, 193 Wn.2d 841, 856-57, 447 P.3d 139 (2019). In insurance law, " 'not every breach discharges performance by the other party.' " *Id.* at 856 (quoting *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 724, 950 P.2d 479 (1997)). Significantly, the insurer has the burden of proving that it was prejudiced. *Coon*, 193 Wn.2d at 857.

The majority opinion finds prejudice as a matter of law. However, the Supreme Court in *Coon* emphasized that "[d]etermining prejudice from a policy breach is a question of fact for the jury and 'will seldom be established as a matter of law.' " *Id.* (quoting *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 228, 961 P.2d 358 (1998)).

Group Health now claims that it was prejudiced because Hall's failure to provide information about her claim prevented it from evaluating the right to reimbursement from Hall's settlement. Group Health now claims that it could not evaluate the right to reimbursement because it did not have enough information to determine whether Hall had been fully compensated. But there is at least a question of fact whether Group Health was prevented from evaluating its right to reimbursement.

The undisputed evidence shows that Group Health *did* evaluate its right to reimbursement without the need for any information from Hall. As noted above, the April 27 letter unequivocally stated Group Health's legal position that there was a right to reimbursement *because Hall settled for less than available policy limits*. The only information Group Health needed to make this decision was the amount of the settlement and the amount of the tortfeasor's

policy limits, which Group Health already had. Additional information about Hall's claim was not relevant to that decision.

Group Health continued to assert this position in the trial court. In its summary judgment brief, Group Health stated, "Because Defendant Hall did not exhaust the tortfeasor's assets, the full compensation rule upon which the Defendant relies does not apply." CP at 1347. Later in the brief, Group Health stated, "The question of whether an insured has not been fully compensated, and therefore need not reimburse her insurer for its subrogated interest from third-party settlement proceeds, arises only when the tortfeasor's assets, or at least those assets readily accessible through an insurance policy, have been exhausted." CP at 1357.

Finally, Group health concluded, "An adequate pool of funds existed to satisfy Defendant Hall's and [Group Health's] claims. Under these circumstances, [Group Health] is entitled *as a matter of law* to reimbursement of its subrogation claim. In summary, Defendant Hall did not exhaust the tortfeasor's assets, so the question of full compensation does not arise." CP at 1361-62 (emphasis added).

In fact, the position Group Health took in the April 27 letter and the summary judgment briefing was wrong. The Supreme Court in *Coon* stated, "Settlement for less than the tortfeasor's policy limits does not create the presumption of full compensation. Instead, acceptance of a settlement is simply *some evidence* that the insured has been fully compensated." 193 Wn.2d at 855 (citation omitted).

The fact that Group Health took a firm position that it was entitled to reimbursement before requesting any information from Hall creates a question of fact regarding prejudice. There is evidence that Group Health would have maintained that position even if Hall had

provided additional information, because it was based on an erroneous legal conclusion that settlement for less than the tortfeasor's policy limits established that Hall had been fully compensated. Based on this evidence, a jury could find that any breach of the duty to cooperate did not prejudice Group Health.

4.     Summary

Group Health can point to some evidence showing that Hall breached her duty to cooperate by disregarding its request for additional information and thereby caused prejudice. But Hall can point to evidence showing that Group Health never requested additional information, but only invited her to provide such information if she wanted Group Health to reconsider its position that reimbursement was required. And Hall can point to evidence that Group Health took the position that reimbursement was required without the need for any additional information and would have continued to take that position even if she had provided that information.

Because this case was decided on summary judgment, we must view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App.2d 557, 569, 459 P.3d 371, *review denied*, 195 Wn.2d 1031 (2020). Viewing the evidence in the light most favorable to Hall, genuine issues of fact exist regarding breach of the duty to cooperate provision and prejudice to Group Health. Accordingly, I dissent.

_____
MAXA, J.

32